This is an appeal from the denial of a motion to compel arbitration. In this case it is undisputed that the arbitration agreement met all of the essential elements of a contract under governing state law and included the claims at issue in this case under governing federal law. Normally that would end the inquiry. The district court here denied the motion to compel arbitration on a finding that the arbitration agreement was unconscionable. Counsel, do you have a position on when the attorney-client relationship actually arose? Yes, Your Honor. There was a retainer agreement executed by Ms. Plummer with my client's law firm and they did actually... But was there no such relationship before that agreement? That is correct, Your Honor. Well, was there a finding on that as to when the relationship arose? Because I think that there's a contention that in fact there was an attorney-client relationship before the retainer agreement was actually signed. Your Honor, the facts established by the record was that the first contact with the McSweeny Langevin law firm was when Ms. Plummer signed the retainer agreement. I thought there was some notation to the effect that her case was an approved case or something. Yes, Your Honor. The case came to McSweeny Langevin through a referral network and there isn't a note in the record about a litigation financing company. There's an email to McSweeny Langevin inquiring about, you know, we have this case shown as being assigned to your firm, this litigation funding company, and the reply was yes, that case... But that has nothing to do with establishing a relationship of attorney-client? I believe the application to the litigation funding company was made at the same time that the retainer agreement was executed. Thank you. Now, our first argument for reversal of the denial is that the district court erred in considering arguments that would invalidate the entire retainer agreement and weren't particularly targeted at the arbitration provision within that contract. Counsel, before you do that, let me ask you a question about the review here. We're under a de novo review, but what is the applicable standard or applicable analysis that we would apply to reviewing the motion to compel arbitration? Your Honor, it is de novo review. I'm afraid I don't understand the question. Are we looking at the motion to compel arbitration under something that's akin to a summary judgment standard? Yes, Your Honor. There were materials submitted outside of the brief, so yes, it would be something akin to a summary judgment standard. Of course, on a summary judgment standard, that's also a de novo review applying the same standards as the district court. The reason I ask the question, Counsel, is that even if we disagree with the district court as to whether or not this was unconscionable under D.C. law, do we have enough facts here to determine whether the motion should be granted? Yes, Your Honor, there is. Of course, unconscionability is traditionally an affirmative defense to a contract. When you look at the evidence that was supplied on that affirmative defense and you consider what the court could properly consider in ruling on this motion, the evidence that was submitted does not chin the bar to prove unconscionability under D.C. law. Let me ask, please, Counsel, a related question. Do you have any objection to any of the facts that the district court found in its opinion? Yes, Your Honor, we do. I don't quite understand this procedure. It's said to be summary judgment, but are you suggesting that there are material issues of fact here that require trial? No, Your Honor. No, Your Honor, I'm not. Well, then, so you're saying we should review these facts on a clearly erroneous standard or what? No, Your Honor, my position is that the issue at the district court's opinion is twofold. One is on some of the facts it considered that it should not have considered, and two, the conclusion of law that the district court drew from those facts. So those are legal arguments, not fact arguments? Yes, Your Honor. Our arguments are entirely legal arguments that we have raised. And on the issue of what facts the court could consider, we've cited a line of cases, including the Buckeye case from the Supreme Court and the Renner Center case from the Supreme Court, that again draws this distinction between arguments that go to the agreement as a whole versus arguments that go to the arbitration provision. But they made substantial arguments that attacked the arbitration provision itself, didn't they? Your Honor, I think you're exactly right. You can see this distinction in some of the arguments they raised. For example, of course, there's two elements to unconscionability, it's procedure and substance. On the substance, their argument was the cost of arbitration render this substantially unconscionable. There's no problem with the court considering that argument under Buckeye or Renner Center. It's narrowly tailored to the arbitration provision. But on procedural unconscionability, every argument they raised, if the court were to accept it, it would invalidate the entire retainer agreement. Because the arguments are all about the circumstances that led to signing the retainer agreement, and they're not tailored to the... Now, weren't some of the procedural arguments, though, attacking the arbitration provision in the sense that, if I recall right, they argued that the attorneys failed to explain, for instance, the costs? There are some of those arguments, but the thrust of their argument was, well, you can look at the district court's opinion. One of the opinions was, or one of the findings of the district court was that part of what made this procedurally unconscionable was that McSweeny Langevin had instilled fear of death into her. And if you read the district court's opinion, the purpose that the district court found in instilling fear of death was so that they could secure the representation to file a product liability suit. That's expressly an argument that goes to the agreement as a whole. Did you make this argument in the trial court, counsel? Your Honor, we did specifically object to the consideration of allegations that do not relate to the substance of the pending motions. So we did object to the consideration, and we very expressly did not put in any proof on the more inflammatory allegations made against our client. Because these are the same allegations in the complaint that we're in a position of essentially having to defeat the claims that we were trying to have submitted to arbitration. So we did specifically object on that ground, Your Honor. I would also note, and we've argued this in our brief, that there is a distinction between a new argument and a new issue for preservation purposes. And again, I believe we sufficiently raised the objection below, but at most this is a different argument. The issue hasn't changed. The issue is, was this agreement unconscionable? And at most this is a new argument, not a new issue. As I was pointing out, there is another line I'd like to point you to in the district court's opinion. And that's that the court, in its findings on unconscionability, specifically referred to the manner in which the agreement containing the arbitration clause was submitted to Ms. Plummer. That it was submitted electronically with a number of other documents at the same time. And so I believe the district court on procedural, on the procedural unconscionability, considered arguments that it simply could not properly consider that went to the agreement as a whole, rather than... Counsel, do we know what those other documents were that were submitted at the same time? I know that some of... I know, for example, that some of them are the litigation funding application I believe was submitted at the same time. I don't have, at my fingertips, I don't have an index of what other documents were. Is it all in the record? I don't know that it was, Your Honor. So isn't that an issue of material fact? Your Honor, I don't believe it is, because under D.C. law, there's expressed case law on the fact that we can't strike something as unconscionable because it was submitted and signed electronically. And there are cases that we cite in our brief where there were a number of, there were a number of documents executed at the same time. Counsel, what if those other documents, though, made Plummer think that the agreement to sign the retainer agreement was tied to the life-saving care? Well, Your Honor, I would argue, and we have argued, that that would be an argument that goes, that would strike down the retainer agreement as a whole, and not just the arbitration agreement. And I believe that's really the thrust of the case, is that we were put in position, and if you compare the statement of facts in Ms. Plummer's amended complaint to the statement of the case in this brief, they're nearly the same facts that are alleged. And I think that underscores the fact that we were put in the position of having to defeat Ms. Plummer's claim in order to secure arbitration, to secure arbitration of those claims. I was going to reserve four minutes for rebuttal, so unless there are further questions, I'll step down now. Very well. Thank you, Mr. Thompson. Good morning, Mr. Baxter. Thank you, Your Honor. Your Honors, may it please the Court, my name is J.R. Baxter. I'm from Benton, Arkansas, and I'm here today representing the appellee, Ms. Jerry Plummer. Your Honors, this is a case about the District Court using the equitable remedy of unconscionability to avoid unfair surprise and to do justice generally. Your Honors, first off, I want to address Judge Graz's question earlier about the standard of review. I think it is clear that this is a de novo review, but it is also clear from this Court's decision in the Nebraska Machine Company that it is a summary judgment standard. So all the evidence is viewed in a light most favorable to my client, because matters were considered outside the pleadings. Now, the appellants have put forth three generalized arguments as to why the District Court should be reversed. First, they argue that the District Court considered matters outside the arbitration clause specifically and to the contract as a whole. Second, they argued that the contract was not procedurally unconscionable by looking at specific factors and isolation rather than looking at the totality of the circumstances. And third, they argued that the contract is not substantially unconscionable for the first time on appeal, arguing that they were offering to pay the full cost of arbitration expenses after the District Court had already ruled in favor of Ms. Plummer on this issue. Turning to the first point, procedural unconscionability is always going to go to the entire contractual negotiations. Here, there were some parts of the procedural unconscionability that went directly to the proceedings that arguably could have been used to invalidate the contract as a whole. But the point is, we didn't argue that the contract was invalid as a whole, and the District Court didn't find that the contract was invalid as a whole. The District Court narrowly construed the facts to the arbitration provision, and there were certain facts before the District Court that it ignored in its analysis that didn't really have to do with the arbitration provision, such as the staggering 45% contingency fee. For a multi-district litigation case where the attorneys were relying on others for the most part. Now, also, the Knott Circuit has said for procedural unconscionability that this court can be informed by the entire contractual negotiations. And if we look at PrimaPaint, which really creates the severability principle, in PrimaPaint there was fraud in the inducement that related to certain contractual obligations absent the arbitration provision, which is completely distinguishable here. Here if you would have sent the retainer agreement through DocuSign to Ms. Plummer and then instantly sent the arbitration provision at a separate contract, the same arguments would still apply to the arbitration provision. If we create these separate contracts, the same arguments apply. She was scared for her life. She thought she had a ticking time bomb inside of her. She was told the papers were going to be coming through that she needed to save her life. So all of that together shows that the district court was proper. And again, this argument was raised for the first time on appeal. They do cite to a footnote, but that footnote that they're talking about in their briefing was just their explanation of why they weren't putting forth evidence. It had nothing to do with objecting to things outside, objecting arguments to the contract as a whole. Now, turning to procedural unconscionability. The D.C. Court of Appeals has made very clear in its most recent opinion on unconscionability and associated events that we're supposed to look at the totality of the circumstances. In associated events, the D.C. Court of Appeals said, you know, we generally look to all the circumstances surrounding the transaction, including bargaining power, reasonable opportunity to understand the contract, the manner in which the contract was entered, the expertise of the parties, and the time frame in which the contract was completed. Counsel, let me ask you, the district court seemed to conclude that this was an egregious situation such that you didn't have to address substantive unconscionability, but only procedural. Is that your argument? Yes, Your Honor. We would, our argument is actually that both procedurally and substantively it is an egregious situation because if you look at it, procedurally she was scared for her life. She felt like she had to sign these contracts to get a life-saving procedure, and substantively if you look at it as the record would have reflected before the district court, this going to arbitration would have completely, would have made it impossible for her to vindicate her remedies. But she had a clearly worded arbitration agreement in front of her that she could have read or did read. What evidence is there in the record that she thought that the retainer agreement was somehow tied to this life-saving treatment? In her first declaration, she does specifically testify that she was told by the people that called her that they were going to be sending her papers through DocuSign, I think the declaration just says they were going to be sending her papers that she needed to sign for her life-saving treatment. And she puts in the declaration that she took that to mean that everything needed to be done quickly. And if you look, this contract was executed on December 12th, or the contract was executed on December 7th, or 8th, I'm sorry, December 8th, and she flew to Florida to have this life-saving surgery on December 11th, which is in her third declaration, and she actually had the surgery on December 12th. So we're talking about a real quick time frame right before she's about to have this life-saving procedure as well, Your Honor. So are you depending on inferences from those facts, or are there facts in the record showing that she thought that they were connected somehow? I think her first declaration says that she thought they were connected. She says, I took this all to mean that I needed to sign these things to get them back quickly. And the retainer agreement did come through DocuSign with the label urgent. And obviously that is going to give someone reason to sign it quickly. So all of those things together, I think she does say that specifically, but there's also inferences as well. And again, those inferences have to be viewed in favor of Ms. Plummer on the standard before this Court. Well, can you explain to me exactly what inequality of bargaining power means? In the best terms I can, Your Honor. Inequality of bargaining power means that it's a take-it-or-leave-it basis. She doesn't have the educational ability or the power, the contractual power, to really bargain with these people. Well, it seems to me that's focusing on her capacity and not on inequality, if you see what I mean. That you don't need to have to know about what the other person might know or feel. What you're talking about is her own difficulties in coming to grips with the contract, right? Yes, Your Honor. So that's not inequality. The other person might be just as confused as far as the situation was concerned, although in this case, obviously was not. Yes, Your Honor. But I'm not sure what it adds to the mix to talk about inequality, unless you're talking about, for instance, asymmetrical information, that they have information that she doesn't, and somehow that puts her in a difficulty that she has. Well, I... So her difficulty, it seems to me, if I may say so, is that she did not have the information necessary. Yes, Your Honor. Yes, Your Honor. But that's nothing to do with inequality. Well, I think the inequality is that they are attorneys in the situation. We do know in this case that they do know about arbitration. I mean, common... But that doesn't add anything to her difficulty, is what I'm saying. I agree with you that she's in a spot, okay? Okay. But I'm not sure why inequality enters into it. And there's another question I have that's related. What exactly does the ability to negotiate mean? Does that mean the capacity to negotiate, the opportunity to go elsewhere, competitive market, all three of those things? What is that about? I think it's a combination of those things. I think the inability to negotiate terms is, for instance, when I apply for a credit... Didn't this contract say that she could negotiate? The contract did, Your Honor. But again, they can't use a separate part of the contract to really save them. Again, we can't really use the contract itself to say that the contract is valid. She didn't really have the ability to negotiate. And to answer your question... Well, how do we know that? Do we know that there was no... What does that mean? Does that mean negotiate with these particular attorneys or go find someone else to negotiate with? Which of those two is this about? I think it's with these particular attorneys. And that's part of the argument here is that the appellants have argued that you have to somehow show that you've looked for other options. Again, that is a singular focus, which is... Okay. How do we know that she couldn't have negotiated with these particular lawyers? Well, A, she says in her declaration that she didn't even know anything about arbitration. She wouldn't have known what... That's different from not having an ability to negotiate, an opportunity. That's different. We don't know that she couldn't have negotiated, do we, with other attorneys, with these attorneys? I think if she would have had the opportunity, it would have been... I think we do know that if she had had the opportunity, it would have been pointless. And we do know that this is all in a rush. They even themselves told her it was urgent. I understand that part. So that would be our position, is that this is all a rush. She believes she has to do this quickly. That negates her opportunity. Let me ask you, if you don't mind, I don't want to deflect you from the argument, but I am interested in the position that perhaps this situation violates the ABA or the ABA canons of ethics, and therefore is a violation of D.C. public policy. Yes, Your Honor. So several... Do you mind speaking to that at this point, or would you rather save that? I can go ahead and speak to that and then jump back to substantive unconscionability if that works for the court. So several courts throughout the United States have started finding that the ABA's imposition on attorneys to have full disclosure with their clients, make sure their clients are reasonably informed in the arbitration context requires that they reasonably inform their clients about certain things, such as cost of arbitration, the potential effect of discovery on arbitration. And that's actually in harmony with an ABA opinion, ABA ethics opinion, that construes this matter. Now the complication when we look at D.C. is D.C. before it adopted the ABA model rules professional conduct had an opinion in Haynes v. Cooter that said that as long as, in general terms, as long as the contract itself in that particular case where a lady was independently represented at the time she entered into the retainer agreement, as long as it informed her that she was losing her right to a jury trial, that that was sufficient under the D.C. rules at the time. And the court in that case goes, clearly says that they're taking as their poll star the D.C. ethics opinion at the time. Well that D.C. ethics rule has not only been replaced by the ABA model rules, which is the ethics rule that the court took as its poll star at the time has also been twice repealed in D.C. So we're back to looking at states like Maine and New Mexico and New Jersey who have all said that there are certain obligations on attorneys to be full and frank. And that's very consistent with what the court still said in Haynes v. Cooter, which is that an attorney, even at the very beginning of an attorney-client relationship, has to be full and frank and fair in the terms of a contract with a client. And that attorney-client contracts are held to a higher standard than other contracts. Is the Haynes case still good law in D.C.? I would say our argument is that the Haynes case is not good law in D.C. because it's predicated on an ethics, its poll star was an ethics opinion that has been twice repealed. And also I think that even if it were good law, it's certainly distinguishable because the plaintiff in that case had counsel that could have advised her, independent counsel, isn't that right? That is correct. She was represented by an attorney in Maryland at the time she entered into the contract. When do you think the attorney-client relationship arose here? Well, Your Honor, I think if you view the facts in a light most favorable to the plaintiff, it arose in November. There are emails between the funding company to McSweeney and Langavin that say the following cases for McSweeney and Langavin have been approved. And Ms. Plummer's name is right there on that email, and I believe it was in November 13th of 2014. So, but even if it, even if the, even as a technical matter, the attorney-client relationship didn't arise until this particular contract came to the attention of the parties, I gather the ABA opinion having to do with a lawyer's duty would apply in the context where the case is being discussed. Isn't that correct? Correct. Even if, as a technical matter, the relationship hasn't, hasn't been established. Correct. Is that correct? Correct, Your Honor. Okay. Thank you. Now, I'm going to try to quickly address substantive unconscionability. The appellants for the first time on appeal have tried to say that this contract is not substantively unconscionable because they have now made an offer to pay for the full cost of arbitration. That shouldn't be considered by this court because it is being made for the first time on appeal. This court does have discretion to consider arguments and issues for the first time on appeal, but that discretion yields when there's new evidence involved. There's clearly new evidence because the offer to pay itself is new evidence. Now, this court in Dobbins did entertain an offer to pay for the first time, made for the first time on appeal when it was made an oral argument, but that wasn't why the court reversed. The court reversed in Dobbins because there wasn't sufficient exploration of cost-forgiving procedures and they remanded it to the district court. They told the district court and said, on remand, if you still find it substantively unconscionable, you should go ahead and take this offer to pay. So this offer to pay is post hoc way too late, and this is governed by D.C.'s unconscionability law. D.C. has said in Wells Fargo, or Keaton v. Wells Fargo, that the Sixth Circuit's decision in Cooper was an insightful analysis of the cost issue, and the Sixth Circuit in Cooper said you can't make an offer to pay in the first instance, even at the district court. They're trying to do the second ladder. Now, they're also saying that this contract doesn't have a cost-sharing provision. It's silent on that. This contract says the arbitration will be conducted by jams, and if you look at jams' rules, it says the costs are split on a pro-rata basis. Thus their reliance on coal is, Your Honor, I see I'm out of time. May I briefly conclude? Finish your thought. Thus their reliance on the D.C. Circuit's opinion in coal is misplaced because also coal only deals with employment arbitration provisions, and it doesn't even have to do with cost. I mean, it doesn't even have to do with ability to pay. It just says in an employment context the employer always has to pay if it's a condition of employment, which has most likely been overruled by the Supreme Court's precedent that you can't have special arbitration on the rules. And for those reasons, Your Honors, we would respectfully ask that this Court affirm. Thank you. Thank you, Mr. Baxter. Mr. Thompson, I think you have about four minutes for rebuttal. Thank you, Your Honor. Picking up where we left off when we were talking, I heard Mr. Baxter tell this Court procedural unconscionability always goes to the entire negotiation of the contract, and I would wholeheartedly agree with that statement. And Mr. Baxter also said that they could rely on these exact same arguments to strike down the entire arbitration, or the entire retainer agreement, and they say that because they didn't actually ask for that, somehow that distinguishes it. And they cite to the LaGranpa case from the Ninth Circuit. The standard in the LaGranpa case was whether no claim threatens to invalidate or otherwise directly affect the entire agreement. So I believe Mr. Baxter has conceded that their arguments on procedural unconscionability affect the entire agreement. They threaten the entire agreement. And Judge Gross, you're correct. The District Court expressly found that this was an egregious case on procedural unconscionability such that he would strike down the agreement even without any proof of substantive unconscionability. So there's no way to separate the unconscionability decision from the fact that the District Court considered arguments on procedural unconscionability that he was not allowed to consider. Well, Counsel, I do. I mean, it does seem that they are inextricably intertwined, but under Shockley, I mean, haven't they met their burden of attacking the arbitration agreement? No, Your Honor, I don't believe they have. Because again, all of their arguments, you could not accept any of their arguments on unconscionability without striking down, on procedural unconscionability without striking down the entire retainer agreement. Judge Arnold, you asked a question about what gross inequality of bargaining power means. And the D.C.'s Court of Appeals defined this in Woodruff v. Cunningham. And what they said you have to show is that you have to show that there was no opportunity for negotiation. And that was their word was opportunity. And of course, the retainer agreement itself says every single term, which would include the arbitration agreement, is negotiable. You have the right to get an attorney separately to advise you on those. So there was an opportunity for negotiations. D.C. Court of Appeals also said that you have to show that the services couldn't be obtained elsewhere. And that's important because procedural unconscionability under D.C. law comes down to the absence of a meaningful choice. And if you have the ability to go elsewhere and get the same services from someone who's not asking you to sign an arbitration agreement, you have the meaningful choice not to retain those lawyers. Did she have a practical opportunity given the time frame that was involved here between when she received these favors and when she got her operation? Your Honor, there's absolutely nothing in the record to suggest that my clients were personally pressuring her or that there was a time limitation placed on the amount of time she could sign the retainer agreement. There's nothing in the record to suggest that she didn't have as much time as she needed to go and look for other representation. Did the district court find otherwise? The district court did make the finding that it is a fact that she signed the retainer agreement 12 minutes after accessing the documents on. What I mean is with respect to how much time there was for her to consider before she was supposed to go to Florida and get her operation. The district court did find those facts, but again, those would go to the entire agreement. Counsel, isn't that somewhat contradicted by the fact it was sent with the title urgent? My time has expired. May I answer your question? Of course. Your Honor, that is one fact, but again, I would just simply say that the entire agreement was what the word urgent said and it wasn't a specific time limit of how, it was just the one word. There was not a specific time limit placed on her review of any of the agreements. Thank you. Very well. The court would like to thank counsel for their briefing and arguments today. The case will be submitted and decided in due course. Madam Clerk, would you announce our next case for argument, please? Yes, Your Honor. The next case for oral argument is Dolan Court v. National Labor Relations Board.